**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **QUINTEZ TALLEY** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **MAJOR CLARK, LAURA BANTA, M.** | : | |
| **NASH, THOMAS GRENEVICH, J. YODIS,** | : | |
| **JOSEPH DUPONT, PA DEPARTMENT** | : | |
| **OF CORRECTIONS and JOHN WETZEL** | : | **NO. 18-5316** |

**MEMORANDUM OPINION**

**Savage, J.**                                                                   **January 24, 2019**

Plaintiff Quintez Talley, a prisoner at SCI Fayette proceeding *pro se*, filed this civil action asserting claims under 42 U.S.C. § 1983 the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). He has named as defendants Major Clark, Laura Banta, M. Nash, Thomas Grenevich, J. Yodis, Joseph Dupont, the Pennsylvania Department of Corrections ("DOC"), and Secretary of Corrections John E. Wetzel. He has also filed a Motion for Leave to Proceed *In Forma Pauperis*. For the following reasons, we shall grant leave to proceed *in forma pauperis* and dismiss his claims and defendants, except the ADA and Rehabilitation Act claims against the DOC.

Factual Background[1]

On January 17, 2018, a psychiatrist at SCI Graterford committed Talley to a Psychiatric Observation Cell ("POC").[2] Talley was placed "on a 1-on-1 close watch as a

---

[1] The following facts are taken from the Complaint.

[2] Compl. ¶ 8.

result of informing medical authorities that he was suicidal."[3] The psychiatrist issued him reading material, a mattress, and a suicide smock and blanket.[4] Talley alleges that the psychiatrist did not grant him permission to possess a writing instrument while on suicide watch. [5]He further contends that a psychiatrist never evaluated him while he remained on suicide watch.[6]

Talley appeared before Hearing Officer Yodis for a misconduct hearing on January 22, 2018.[7] Talley told Yodis that he had not been properly served with "several of the nine (9) misconducts."[8] He also informed Yodis that he was not able to write out a statement, request witnesses, and file an appeal because he had no writing utensil.[9] Yodis "insisted" that his superior, Joseph Dupont, had told him that the misconduct hearing could proceed.[10]

Talley then requested that Yodis postpone the hearing until he "was no longer being treated for [his] mental infirmity (suicidal ideations/thoughts), at which time [he] would be permitted to possess a writing utensil."[11] Yodis gave Talley "the choice of either staying for his misconduct (and being denied these rights that every inmate served a

---

[3] *Id.*

[4] *Id.* ¶ 9.

[5] *Id.*

[6] *Id.* ¶ 10.

[7] *Id.* ¶ 11.

[8] *Id.*

[9] *Id.*

[10] *Id.* ¶ 12.

[11] *Id.* ¶ 13.

misconduct are guaranteed) or . . . he . . . would conduct [the] hearings in absentee, find [Talley] 'guilty' of ALL nine (9)—and sentence/sanction [him] to the MAXIMUM Disciplinary Custody (D/C) time each charge held."[12] Talley ultimately waived his rights to submit statements, request witnesses, and file an appeal "because he didn't want Defendant Yodis to sanction him to the maximum that every charge held."[13] Yodis ultimately sanctioned Talley to ten (10) months of D/C time "for seven (7) of the nine (9) misconduct hearings."[14] Talley also "signed a waiver agreeing for two (2) of the original misconducts . . . to be held a reasonable time after the waiver."[15]

Talley subsequently told the Program Review Committee, which consisted of Major Clark, Banta, Grenevich and Nash, that he had requested a postponement of the misconduct hearing and wished to appeal the sanction. But, he could not because he did not have a writing utensil.[16] He requested that the PRC provide "a [Certified Peer Specialist (CPS)] to write what [Talley] dictated to him."[17] Talley alleges that the PRC refused to provide a CPS and told him that "if he wanted to be afforded the right to appeal like other prisoners, maybe he . . . shouldn't say he was suicidal."[18]

---

[12] *Id.*

[13] *Id.* ¶ 14.

[14] *Id.* ¶ 15.

[15] *Id.* ¶ 33.

[16] *Id.* ¶ 17.

[17] *Id.*

[18] *Id.* ¶ 18.

Talley remained on close/suicide watch until January 31, 2018, when he was transferred to SCI Fayette.[19] After he arrived there, he was "recommitted to the POC, where he remained unable to possess paper (e.g. misconduct appeal forms, [etc]) and writing utensils, making appealing [the] sanctions impossible."[20] On February 5, 2018, Talley was released from the POC and placed in the Special Management Unit ("SMU") at SCI Fayette.[21] He was unable to access his property until February 9, 2019, which was three (3) days beyond the fifteen (15)-day period he was given to appeal Yodis's sanctions.[22]

On February 8, 2018, Yodis conducted a misconduct hearing on the remaining two misconducts.[23] Finding Talley guilty of both, he sanctioned him to ninety (90) days of D/C time and loss of job.[24] He also directed that Talley's inmate account be assessed for the cost of property that was destroyed.[25] Yodis asked C/O Strauss, an officer at SCI Fayette, to provide Talley copies of the sanctions.[26] Talley alleges that Yodis mailed the copies to

---

[19] *Id.* ¶ 19.

[20] *Id.* ¶ 20.

[21] *Id.* ¶ 21.

[22] *Id.* ¶ 22.

[23] *Id.* ¶ 37.

[24] *Id.* ¶¶ 38-39.

[25] *Id.* ¶ 42.

[26] *Id.* ¶ 43.

4

C/O Strauss and that they were not provided to him until March 7, 2018.[27] He contends that this "yet again undermin[ed his] ability to appeal [the] sanctions."[28]

Talley filed this civil action pursuant to 42 U.S.C. § 1983, Titles II and V of the ADA, the Rehabilitation Act, and RICO. He alleges that: (1) Yodis and the DOC violated the ADA and Rehabilitation Act by failing to accommodate him by postponing his misconduct hearings; (2) Dupont and the DOC violated the ADA and Rehabilitation Act by allowing Yodis to conduct the misconduct hearings; and (3) Clark, Banta, Grenevich, and Nash (and, by extension, the DOC) violated the ADA and Rehabilitation Act by failing to accommodate him by providing a CPS to assist him in appealing the imposed sanctions.[29]

Talley also contends that the same conduct violated his rights under the Privileges and Immunities, Due Process, and Equal Protection Clauses of the Fourteenth Amendment. He further alleges that the same conduct violated his right to be free from retaliation pursuant to the First Amendment, and that Yodis violated his right to access the courts under the First Amendment by failing to preserve video footage of Talley's suicide attempt. He also asserts that his Fifth Amendment rights were violated when Yodis imposed sanctions, and that his Eighth Amendment rights were violated by Yodis's "ongoing practice of refusing to take into consideration [his] mental infirmity/illness during misconduct hearings," Yodis's imposition of a sanction instructing that Talley's inmate account be assessed for the cost of property damage, and Wetzel's "willful blindness to

---

[27] *Id.* ¶¶ 45-46.

[28] *Id.* ¶ 47.

[29] Id. ¶¶ 54-56.

the ongoing practice of inmates . . . being subjected to D/C time for conduct that is a direct result of mental illness, not intentional violations of prison rules."[30]

Talley also claims that Yodis violated RICO by using the United States Postal Service to deprive him of his ability to appeal the sanctions, as well as by denying him his right to be immune from being sanctioned for suicide attempts.[31] Finally, he asserts several state law tort claims based on the same conduct, including claims for coercion and breach of contract. He seeks a declaration that the defendants are obligated to abide by Title II of the ADA and/or the RA during disciplinary proceedings; an injunction expunging his misconducts, directing Wetzel and the DOC to set forth a policy "prohibit[ing] the service of misconducts upon prisoners psychiatrically committed to POCs," and an order "prohibiting the deduction of any funds from [his] inmate account for any of the above referenced misconducts."[32] He also seeks damages.[33]

## Standard of Review

Because it appears that he is not capable of paying the fees to commence this civil action, Talley will be granted leave to proceed *in forma pauperis*.[34] Because Talley is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies. That provision requires the Court to screen the Complaint and dismiss it if, among other things, it fails to state a claim.

---

[30] *Id.* ¶¶ 59-62.

[31] *Id.* ¶ 57.

[32] *Id.* ¶¶ 66-69.

[33] *Id.* ¶¶ 70-75.

[34] However, as Talley is a prisoner, he will be obligated to pay the $350.00 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

To survive dismissal, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements[] do not suffice." *Id.* Because Talley is proceeding *pro se*, we are obligated to construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

Discussion

ADA and Rehabilitation Act Claims

"The ADA and the Rehabilitation Act have the same standard for liability and are to be interpreted consistently." *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 166-67 (3d Cir. 2015) (citing *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012). Both "prohibit federally funded state programs from discriminating against a disabled individual solely by reason of his or her disability." *Id.* The Supreme Court has held that "Title II of the [ADA], which prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that individual's disability, covers inmates in state prisons." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998) (quoting 42 U.S.C. §§ 12131 & 12132) (internal quotations omitted). To state a claim under these Acts, "a plaintiff must show (a) that he has a disability, (b) that he was either excluded from participation in or denied the benefits of some entity's services, programs, or activities, and (c) that such exclusion, denial of benefits, or discrimination was by reason of h[is] disability." *Matthews*, 613 F. App'x at 167 (citing 29 U.S.C. § 794; 42 U.S.C. § 12132).

Although the United States Court of Appeals for the Third Circuit has not addressed the issue precedentially, most courts "have held that Title II does not authorize suits against government officers in their individual capacities." *Williams v. Hayman*, 657

7

F. Supp. 2d 488, 502 (D.N.J. 2008); *see also Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (per curiam) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."). Also, because the individual defendants are not public entities subject to suit, Talley cannot assert Rehabilitation Act claims against them. *See Matthews*, 613 F. App'x at 169. Thus, we shall dismiss the ADA and Rehabilitation Act claims against the individual defendants while permitting him to proceed on his ADA and Rehabilitation Act claims against the DOC at this time.

## RICO Claims

Talley suggest that Yodis violated RICO by "extorting" him of his right to be immune from sanctions for suicide attempts, sanctioning him to pay the costs of damaged property, and by using the United States Postal Service "to deprive [him] the ability [to] appeal [the] sanction."[35]

The federal civil RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter[, which prohibits racketeering activity,] may sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c). Section 1962 provides, in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . (d) it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

---

[35] Compl. ¶ 57.

18 U.S.C. § 1962.

To state a civil RICO claim, a plaintiff must plausibly allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The RICO statute defines "racketeering activity" by enumerating a list of predicate acts. *See* 18 U.S.C. § 1961(1). A "pattern" of racketeering activity requires at least two predicate acts of such activity. *See* 18 U.S.C. § 1961(5).

Talley fails to plead a pattern of racketeering acts. Talley suggests that Yodis engaged in "extortion" and faults him for using the mail as a means of communication to send him copies of his sanctions after the second disciplinary proceeding. His vague and conclusory statements are insufficient to state a valid civil RICO claim. *See Jung v. Bank of Am., N.A.*, No. 3:16-CV-00704, 2016 WL 5929273, at *10 (M.D. Pa. Aug. 2, 2016), *Report and Recommendation adopted by* 2016 WL 5928805 (M.D. Pa. Oct. 11, 2016) (allegations that "unspecified Defendants utilized mail as a general means of communication" were insufficient to state a RICO claim). Accordingly, Talley's RICO claims will be dismissed.[36]

## Section 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*,

---

[36] Any mental and emotional distress alleged by Talley are not injuries to "business or property" for purposes of RICO. *Clark v. Conahan*, 737 F. Supp. 2d 239, 255 (M.D. Pa. 2010) (observing that "[m]ental distress, emotional distress, and harmed reputations do not constitute injury to business or property sufficient to confer standing on a RICO plaintiff" and explaining that "injury for RICO purposes requires proof of concrete financial loss, not mere injury to an intangible property interest").

487 U.S. 42, 48 (1988). The facts pled by Talley do not establish a plausible constitutional violation.

First Amendment Claims

Talley vaguely suggests that the defendants' conduct constitutes retaliation in violation of the First Amendment. "To establish a claim of retaliation, a prisoner must show: (1) that he was engaged in a constitutionally protected activity; (2) that he 'suffered some adverse action at the hands of the prison officials'; and (3) that the protected activity was 'a substantial or motivating factor' in the prison officials' decision to take the adverse action." *Jones v. Davidson*, 666 F. App'x 143, 148 (3d Cir. 2016) (per curiam) (quoting *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001) (internal quotations omitted)). Talley does not identify the constitutionally protected conduct he was engaged in and does not allege that the issues surrounding his misconduct hearings were tied to a retaliatory motive. Hence, his retaliation claims will be dismissed.

Talley also suggests that Yodis impeded his right to access the courts under the First Amendment by failing to preserve video footage relevant to his misconducts. "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis*, 518 U.S. at 350). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial

of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.*

Presumably, Talley is suggesting that Yodis has impeded his right to raise the claims he is raising in the instant suit. Talley appears to suggest that he will not be able to litigate these claims as effectively without the video footage.

The right of meaningful access only requires that an inmate not be impeded from commencing an action. *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995). Talley has clearly been able to commence an action raising his claims. Moreover, the option of a spoliation instruction provides another remedy for Talley. *See Jenkins v. Hutcheson*, No. 6:15-cv-50, 2015 WL 9480037, at *4 n.3 (S.D. Ga. Dec. 29, 2015). Accordingly, his access to the courts claim will be dismissed.

### Fifth Amendment Claims

Talley suggests that Yodis violated his Fifth Amendment rights through the imposition of sanctions. Because Yodis is a state actor, not a federal actor, the Fifth Amendment does not apply to her. *See Mutschler v. SCI Albion CHCA Health Care*, 445 F. App'x 617, 621 (3d Cir. 2011) (per curiam) (citing *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)); *Basile v. Elizabethtown Area Sch. Dist.*, 61 F. Supp. 2d 392, 403 (E.D. Pa. 1999). Thus, the Fifth Amendment claims will be dismissed.

### Eighth Amendment Claims

Talley alleges that Yodis violated his Eighth Amendment rights by "refusing to take into consideration [his] mental infirmity/illness during misconduct hearings" and by sanctioning him by instructing that his prison account be assessed for the cost of "property

11

damage which occurred and [was] used . . . to carry out a suicide attempt."[37] Talley also suggests that Wetzel has violated the Eighth Amendment by being "willful[ly] blind[] to the ongoing practice of inmates . . . being subjected to D/C time for conduct that is a direct result of mental illness, not intentional violations of prison rules."[38] Talley fails to state a plausible Eighth Amendment claim.

Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment only if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.*

The punishment conditions alleged by Talley, specifically, that Yodis did not take his mental condition into account during his disciplinary proceedings and that he was sanctioned without that consideration, did not deprive him of basic necessities nor represent "a dramatic departure from accepted standards for conditions of confinement." *McDowell v. Litz*, 419 F. App'x 149, 152 (3d Cir. 2011) (per curiam) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003)) (holding that 90-day suspension of telephone privileges and loss of institutional employment as a result of disciplinary sanction did not violate the Eighth Amendment); *see also Gilblom v. Gillipsie*, 435 F. App'x 165, 168 (3d

---

[37] Compl. ¶¶ 60-61.

[38] *Id.* ¶ 62.

12

Cir. 2011) (rejecting Eighth Amendment claim based on thirty-six hour "placement in a dry cell for the purpose of searching [plaintiff's] excrement"); *Young v. Beard*, 227 F. App'x 138, 141 (3d Cir. 2007) (per curiam) ("We also reject Young's claim that placement in disciplinary confinement itself amounted to cruel and unusual punishment" (citing *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)).

Talley also claims that Yodis violated the Excessive Fines Clause of the Eighth Amendment by assessing Talley's inmate account a charge for the cost of destroyed property. "By its plain language, the Excessive Fines Clause of the Eighth Amendment is violated only if the disputed fees are both 'fines' and 'excessive.'" *Tillman v. Lebanon Cty. Corr. Fac.*, 221 F.3d 410, 420 (3d Cir. 2000). The term "fine" refers to a punishment for a criminal offense. *Id.* Even assuming that the costs imposed amount to a fine, nothing in the Complaint suggests that these costs were excessive. Rather, it appears that the fine was equivalent to the actual value of the property Talley had destroyed. Thus, Talley cannot maintain his claim under the Excessive Fines Clause.

Talley also fails to state a claim for relief against Wetzel. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex*

*rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Talley suggests that Wetzel has been "willful[ly] blind[] to the ongoing practice of inmates . . . being subjected to D/C time for conduct that is a direct result of mental illness, not intentional violations of prison rules."[39] This generalized, speculative allegation is insufficient to impose liability against Wetzel. Talley's Eighth Amendment claims against Wetzel must be dismissed.

## Fourteenth Amendment Claims

### Privileges and Immunities Clause Claims

Talley suggests that the defendants' conduct violated his rights under the Fourteenth Amendment's Privileges and Immunities Clause. To allege a claim under the Privileges and Immunities Clause, a plaintiff must show "(1) a violation of a 'fundamental' right; and (2) a determination as to 'whether there are 'substantial' reasons for discrimination and 'whether the degree of discrimination bears a close relation to them.'" *Thomas v. Cianfrani*, No. 01-3096, 2009 WL 1704471, at *8 (E.D. Pa. June 17, 2009) (quoting *Salem Blue Collar Workers Ass'n v. City of Salem*, 33 F.3d 265, 268 (3d Cir. 1994)).

The Privileges and Immunities Clause "only applies to uniquely federal rights." *Id.* (citing *Slaughter-House Cases*, 83 U.S. 36, 73-74 (1873)). For example, such rights

---

[39] Compl. ¶ 62.

14

include "the right to inform federal officials of violations of federal law, the right to be free from violence while in the lawful custody of a United States marshal, the right to enter the public lands, the right to vote in national elections, the right to petition Congress for redress of grievances, and the right to pass freely from state to state." *In re Sacred Heart Hosp. of Norristown*, 133 F.3d 237, 245 n.11 (3d Cir. 1998) (internal citations omitted). Since *Slaughter-House*, "the Privileges and Immunities Clause . . . 'has remained essentially moribund' . . . and the Supreme Court has subsequently relied almost exclusively on the Due Process Clause as the source of unenumerated rights." *Id.* at 244. None of these unique federal rights are implicated. Because nothing in the complaint suggests a violation of a fundamental right under that clause, the Privileges and Immunities claims will be dismissed.

*Due Process Claims*

Talley suggests that the defendants' conduct regarding his disciplinary proceedings violated his due process rights under the Fourteenth Amendment. At the first misconduct hearing, Yodis imposed ten (10) months of disciplinary custody time; and at the second, she imposed ninety (90) days of disciplinary custody time and loss of a job.

"[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)). The sanctions imposed upon Talley are insufficient to trigger due process protections. *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) ("[C]onfinement in administrative or punitive segregation

will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest [for purpose of triggering due process protection]." (quoting *Sandin*, 515 U.S. 472 (1995))); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [. . .] by a court of law" and does not constitute a due process violation (quotation omitted)). Moreover, Talley does not have a property interest in his prison job. *See Burns*, 642 F.3d at 171. Therefore, Talley has not pleaded a due process violation.

*Equal Protection Claims*

Talley also suggests that the defendants' conduct violated his rights under the Equal Protection Clause of the Fourteenth Amendment. "[T]o state a claim for "class of one" equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

Talley's allegation, which forms the sole basis for his equal protection claim, amounts to nothing more than a formulaic recitation of the elements of a "class of one" equal protection claim. He has not alleged any facts regarding who would be considered similarly situated parties nor has he alleged that he was the only inmate to have been subjected to disciplinary proceedings without the opportunity to submit statements and witness requests and appeal the outcome. Thus, the Complaint does not state an equal protection claim. *See Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238–39 (3d Cir. 2011) ("Without more specific factual allegations as to the allegedly similarly situated parties, he has not made plausible the conclusion that those parties exist and that they are like him

in all relevant aspects."); *Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (finding equal protection claim not pled where plaintiff failed to "allege facts showing that he was similarly situated to the inmates who received wheelchair footrests, crutches and canes, or that there was no rational basis for his different treatment").

State Law Claims

Talley also asserts claims under state law for coercion and breach of contract against Yodis, Wetzel, and the DOC. Under Pennsylvania state law, there is no tort of coercion. *Benigno v. Flately*, No. 01-CV-2158, 2001 WL 1132211, at *1 (E.D. Pa. Sept. 13, 2001). With respect to a claim for breach of contract under Pennsylvania law, a plaintiff must allege "(1) 'the existence of a contract, including its essential terms'; (2) 'a breach of a duty imposed by the contract', and (3) 'resultant damages.'" *Fortunato v. CGA Law Firm*, No. 1:17-cv-00201, 2018 WL 4635963, at *3 (M.D. Pa. Sept. 27, Compl. ¶ 57.2018) (quoting *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. Ct. 2002)). Nothing in the Complaint establishes or suggests the existence of a contract between Talley and the DOC, Yodis, and Wetzel. Hence, Talley's state law claims will be dismissed.

Conclusion

For the foregoing reasons, we shall grant Talley leave to proceed *in forma pauperis*, dismiss all claims except the ADA and Rehabilitation Act claims against the DOC, and dismiss all defendants except the DOC.

/s/TIMOTHY J. SAVAGE