# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUINTEZ TALLEY | : | CIVIL ACTION |
| v. | : | |
| MAJOR CLARK, LAURA BANTA, M. NASH, THOMAS GRENEVICH, J. YODIS, JOSEPH DUPONT, PA DEPARTMENT OF CORRECTIONS, and JOHN E. WETZEL | : | NO. 18-5316 |

## MEMORANDUM OPINION

**Savage, J.**                                                                   August 7, 2019

Plaintiff Quintez Talley, a prisoner proceeding *pro se* and *in forma pauperis*,[1] filed this civil action asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and 42 U.S.C. § 1983. He has sued Major Clark, Laura Banta, M. Nash, Thomas Grenevich, J. Yodis, Joseph Dupont, the Pennsylvania Department of Corrections ("DOC"), and Secretary of Commissions John E. Wetzel.[2] On January 24, 2019, we dismissed his claims against all defendants except the ADA and Rehabilitation claims against the DOC.[3] Talley alleges the DOC violated the ADA and Rehabilitation Act by failing to accommodate him during his misconduct hearings and his appeals of the sanctions.

The DOC has moved to dismiss the remaining claims for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). Because

---

[1] January 24, 2019 Order granting Pl.'s Mot. for Leave to Proceed *In Forma Pauperis* (ECF No. 8).
[2] Compl. (ECF No. 2).
[3] January 24, 2019 Mem. Op. (ECF No. 7).

1

Talley failed to exhaust his administrative remedies, we shall grant the motion and dismiss the complaint.

## Background[4]

On January 17, 2018, a psychiatrist at SCI Graterford committed Talley to a Psychiatric Observation Cell ("POC").[5] Talley was placed "on a 1-on-1 close watch as a result of informing medical authorities that he was suicidal."[6] The psychiatrist issued him reading material, a mattress, and a suicide smock and blanket.[7] He alleges that the psychiatrist did not grant him permission to possess a writing instrument while on suicide watch.[8] He further contends that while he remained on suicide watch, he was not evaluated by a psychiatrist.[9]

Talley appeared before Hearing Examiner Yodis for a misconduct hearing on January 22, 2018.[10] Talley told Yodis that he had not been properly served with "several of the nine (9) misconducts."[11] He also informed Yodis that he was unable to write a statement, request witnesses, and file an appeal because he had no writing utensil.[12] Yodis "insisted" that his superior, Joseph Dupont, had told him that the misconduct hearing could proceed.[13]

---

[4] The following facts are taken from the complaint and summarized in our January 24, 2019 memorandum opinion. For the purposes of this motion, they are considered as true.

[5] Compl. ¶ 8.

[6] *Id.*

[7] *Id.* ¶ 9.

[8] *Id.*

[9] *Id.* ¶ 10.

[10] *Id.* ¶ 11.

[11] *Id.*

[12] *Id.*

[13] *Id.* ¶ 12.

Talley requested that Yodis postpone the hearing until he "was no longer being treated for [his] mental infirmity (suicidal ideations/thoughts), at which time [he] would be permitted to possess a writing utensil . . . ."[14] Yodis gave Talley the "choice of either staying for his misconduct (and being denied these rights that every inmate served a misconduct are guaranteed) or . . . [Yodis] would conduct [the] hearings in absentee, find [Talley] 'guilty' of ALL nine (9)—and sentence/sanction [him] to the MAXIMUM Disciplinary Custody (D/C) time each charge held."[15] Talley then waived his rights to submit statements, request witnesses, and file an appeal "because he didn't want Defendant Yodis to sanction him to the maximum that every charge held."[16] Yodis sanctioned Talley to "ten (10) months of D/C time for seven (7) of the nine (9) misconduct hearings."[17] Talley also "signed a waiver agreeing for two (2) of the original misconducts . . . to be held a reasonable time after the waiver."[18]

On appeal, Talley subsequently told the Program Review Committee ("PRC"), which consisted of Clark, Banta, Grenevich, and Nash, that he had requested a postponement of the misconduct hearing and wished to appeal the sanction. But, he could not because he did not have a writing utensil.[19] He requested that the PRC provide "a [Certified Peer Specialist (CPS)] to write what [Talley] dictated to him."[20] He alleges

---

[14] *Id.* ¶ 13.
[15] *Id.*
[16] *Id.* ¶ 14.
[17] *Id.* ¶ 15.
[18] *Id.* ¶ 33.
[19] *Id.* ¶ 17.
[20] *Id.*

3

that the PRC refused to provide a CPS and told him that "if he wanted to be afforded the right to appeal like other prisoners, maybe [Talley] shouldn't say he was suicidal."[21]

Talley "remained on close/suicide watch" until January 31, 2018, when he was transferred to SCI Fayette.[22] After he arrived there, he was "recommitted to the POC, where he remained unable to possess paper (e.g. misconduct appeal forms, ect [sic]) and writing utensils, making appealing [the] sanction(s) impossible."[23] On February 5, 2018, Talley was released from the POC and placed in the Special Management Unit ("SMU") at SCI Fayette.[24] He was unable to access his property until February 9, 2018, which was three days beyond the 15-day period he was given to appeal Yodis's sanctions.[25]

On February 8, 2018, Yodis conducted a misconduct hearing on the remaining two misconducts.[26] Finding Talley guilty of both, he sanctioned him to ninety (90) days of D/C time and loss of job.[27] He also directed that Talley's inmate account be assessed for the cost of property that was destroyed.[28] Yodis asked C/O Strauss, an officer at SCI Fayette, to provide Talley copies of the sanctions.[29] Talley alleges that Yodis mailed the copies to C/O Strauss and that they were not provided to him until March 7, 2018.[30] He contends

---

[21] *Id.* ¶ 18.
[22] *Id.* ¶ 19.
[23] *Id.* ¶ 20.
[24] *Id.* ¶ 21.
[25] *Id.* ¶ 22.
[26] *Id.* ¶ 37.
[27] *Id.* ¶¶ 38-39.
[28] *Id.* ¶ 42.
[29] *Id.* ¶ 43.
[30] *Id.* ¶¶ 45-46.

that this "yet again undermin[ed his] ability to appeal [the] sanctions in the timeframe obligated by the Policy."[31]

Talley filed this civil action pursuant to 42 U.S.C. § 1983, Titles II and V of the ADA, the Rehabilitation Act, and RICO. On January 24, 2019, after screening the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), we dismissed his claims except the ADA and Rehabilitation claims against the DOC.[32] With respect to the two remaining claims against the DOC, Talley alleges that: (1) the DOC violated the ADA and Rehabilitation Act by failing to accommodate him by postponing his misconduct hearings; (2) the DOC violated the ADA and Rehabilitation Act by allowing Yodis to conduct the misconduct hearings; and (3) the PRC (by extension, the DOC) violated the ADA and Rehabilitation Act by failing to accommodate him by providing a CPS to assist him in appealing the imposed sanctions.[33]

The DOC moves to dismiss for failure to exhaust administrative remedies required by the PLRA. It argues that Talley's claims are barred because he failed to follow the mandatory administrative process. Because the exhaustion issue arises from indisputably authentic documents, we may decide the motion without converting it to a summary judgment motion.[34] *Spruill v. Gillis*, 372 F.3d 218, 228 (3d Cir. 2004) (exhaustion "turn[ed] on indisputably authentic documents related to [prison] grievances,"

---

[31] *Id.* ¶ 47.

[32] January 24, 2019 Mem. Op.

[33] *Id.* ¶¶ 54-56.

[34] The DOC submits as an exhibit the DC-ADM 801.V., and Talley submits as an exhibit his January 22, 2018 Disciplinary Hearing Report. Def.'s Mot. to Dismiss, Ex. 1 (ECF No. 11-2); Pl.'s Opp'n, Ex. 1 (ECF No. 12).

5

which the court may consider without converting a motion to dismiss into a motion for summary judgment).

## Standard of Review

Pursuant to Rule 12(b)(6), a court may dismiss all or part of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 557).

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which, if proven later, support a conclusion that the cause of action can be established.

In assessing the sufficiency of a complaint, a court must: (1) identify the elements of the causes of action; (2) disregard conclusory statements, leaving only factual allegations; and (3) assuming the truth of those factual allegations, determine whether they plausibly give rise to an entitlement to relief. *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (internal quotation marks and citations omitted) (quoting *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

**Analysis**

Before filing suit involving prison life under any federal law, including the ADA and the Rehabilitation Act, a prisoner must exhaust all available administrative remedies. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060-61 (9th Cir. 2007). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [1983 or any other federal law] until administrative remedies as available are exhausted." 42 U.S.C. § 1997(e)(a). To properly exhaust, the prisoner must comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). He must pursue all available avenues in the process. *Id.*; *see also Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016); *Spruill*, 372 F.3d at 222. If he fails to do so, his action must be dismissed. *Spruill*, 372 F.3d at 227.

The DOC maintains an official grievance process entitled the "Inmate Grievance System" and is governed by Administrative Regulation 804 ("DC-ADM 804").[35] Pursuant to the DC-ADM 804, "[a] grievance directly related to a specific inmate misconduct charge . . . must be addressed through Department policy DC-ADM 801, 'Inmate Discipline.'" *Howard v. Chatcavage*, 570 F. App'x 117, 119 (3d Cir. 2014) (citing DC-ADM 804, Inmate Grievance System Procedures Manual).

The process starts with a misconduct hearing before a hearing examiner. The appeals process consists of three levels.[36] The inmate can first appeal the hearing examiner's decision to the PRC within 15 days of the hearing.[37] If the PRC ruling is adverse, he may appeal the PRC decision to the Facility Manager or designee within

---

[35] DC-ADM 804.VI.A.8.

[36] DC-ADM 801.V.A.1.

[37] *Id.*

7

seven days of the PRC decision.[38] An appeal from the Facility Manager's decision is to the Chief Hearing Examiner and must be filed within seven days.[39] *Hagan v. Chambers*, No. 08-1766, 2010 WL 4812973, at *18 (M.D. Pa. Nov. 19, 2010) (citing DC-ADM 801); *see also Grisby v. McBeth*, No. 17-0243, 2018 WL 1518566, at *3 (M.D. Pa. Mar. 28, 2018).

The exhaustion requirement is mandatory, precluding judicial discretion. Consequently, a court may not excuse a failure to exhaust even if there are "special circumstances." *Ross*, 136 S. Ct. at 1856. The only exception is where an administrative remedy is not available. Section 1997e(a) of the PLRA only requires the exhaustion of available remedies. Stated differently, if the administrative remedies are not available, there is nothing to exhaust.

There are three situations where the administrative remedies are deemed unavailable: (1) the administrative procedure, in practice, does not afford inmates a real chance for redress because the prison administrators refuse or are unable to process the grievance; (2) the procedure is so "opaque" that inmates cannot "discover or navigate it;" and (3) the prison administrators prevent or thwart inmates from pursuing grievances through the process by "machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60.

None of these circumstances exist in this case. By his own allegations, Talley chose not to file appeals that were available to him.

Talley's misconduct hearings with Hearing Examiner Yodis were held on January

---

[38] DC-ADM 801.V.B.1.//
[39] DC-ADM 801.V.C.3-4.

22 and February 8, 2018. After the January 22, 2018 hearing, Talley appeared before the PRC, consisting of Clark, Banta, Grenevich, and Nash. He alleges he requested a writing utensil and a CPS to transcribe his complaint. He alleges the PRC refused, telling him he should not have said he was suicidal if he wanted the right to appeal like other prisoners.

Talley did not appeal the hearing examiner's or the PRC's decisions. He asserts that his ability to "exhaust" his remedies was "impeded" and "unavailable."[40] He claims that because he was on suicide watch, he was unable to possess a writing utensil.[41] He also contends he was not able to access his property until February 9, 2018, which was three days beyond the 15-day period given to appeal Yodis's sanction.[42] With respect to the February 8, 2018 hearing, Talley admits he did not take any of the appeal steps, contending he was not provided with the copies of his sanctions until March 7, 2018, "undermin[ing his] ability to appeal."[43]

In his opposition to the motion, Talley reiterates that he was unable to complete the grievance process because the process was unavailable to him.[44] Specifically, he argues the process was unavailable because the officers refused to give him writing utensils or a CPS within the necessary time frame to comply with the appeal process.[45]

The appeal process is set out in section five of the DOC's Inmate Discipline

---

[40] Compl. ¶ 16.
[41] *Id.*
[42] *Id.* ¶ 22.
[43] *Id.* ¶ 47.
[44] Pl.'s Opp'n at 2-3 (ECF No. 12).
[45] *Id.*

Procedures Manual.[46] Talley did not exhaust his administrative remedies because he did not complete each step of the appeals' process available to him. The mandatory procedure fixes time limitations for filing an appeal at each of the three levels of appeal.[47] Each of these appeals is required under DC-ADM 801.V.[48]

Talley had the opportunity and the obligation to appeal Yodis's and the PRC's decisions to the Facility Manager and then the Chief Hearing Officer. Talley admits he did not complete the appeal process.

Talley argues instead that his appeals would have been untimely due to the actions of the DOC officers. Contrary to his contention, he was not prevented from pursuing his remedies. He may have been delayed, but he was not precluded from appealing the hearing examiner's and the PRC's decisions. DC-ADM 801 provides that "[i]nmates suffering from a serious mental illness . . . will not have their appeals rejected as untimely."[49] This exemption from the time requirement applies to all levels of the process.[50]

There is no question that Talley suffers from a serious mental illness.[51] As he states in his complaint, he was in psychiatric housing, on suicide watch, and in need of

---

[46] DC-ADM 801. Talley was familiar with the DOC policy. Indeed, he cites it in his complaint. *See* Compl. ¶¶ 16, 29, 47.

[47] *See* DC-ADM 801.V.A.1.; 801.V.B.1.; 801.V.C.3.

[48] DC-ADM 801.V.A.1.; 801.V.B.1.; 801.V.C.3.

[49] DC-ADM 801.V.A.1; 801.V.B.1.; 801.V.C.3.

[50] DC-ADM 801.V.A.1; 801.V.B.1.; 801.V.C.3.

[51] A serious mental illness is defined as "[a] substantial disorder of thought or mood, which significantly impairs judgment, behavior, capacity or recognize reality, or cope with the ordinary demands of life." *See* DC-ADM 801, Glossary of Terms.

psychiatric treatment.[52] He alleges he has a mental disability.[53]

As an inmate suffering from a serious mental illness, Tally could have filed an appeal after the time limit expired. Instead of filing an appeal, Talley decided to bring this lawsuit. Had he taken an appeal and the DOC rejected it as untimely, he could claim his remedies had been exhausted. But, he did not.

Talley cannot claim futility because any appeal he might have taken once he was able to do so would have been untimely. Futility does not excuse his failure to pursue the grievance process. *See Ross*, 136 S. Ct. at 1859-60; *see also Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002)); *Nyhuis v. Reno*, 204 F.3d 65, 66-67 (3d Cir. 2000); *Wright v. State Corr. Inst. at Greene*, No. 06-865, 2009 WL 2581665, at *3 (W.D. Pa. Aug. 20, 2009) (holding that because DC-AMD 804 allows for extensions of time in certain circumstances, and because plaintiff did not ask for an extension to file an out-of-time grievance, he had not substantially complied with the administrative remedy to exhaust claims); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (prison allowed grievances to be filed late for good cause and because prisoner did not seek permission to file late, he did not exhaust administrative remedies).

## Conclusion

Because Talley failed to exhaust his available administrative remedies as required under 42 U.S.C. § 1997(e)(a), his claims are barred. Therefore, we shall grant the defendant's motion and dismiss the complaint.

---

[52] *See* Compl. ¶¶ 8-10.
[53] *Id.* ¶¶ 13, 23, 28, 29, 31, 32 & n.4, 53.